the court will take up people against Garnell generally 5, 14, 0489. Preliminarily, the court will note that Justice Chapman, who is unable to be present, is also a member of the panel and will participate fully in this case, will listen to the oral arguments and read the briefs. Counsel, are you ready to proceed? You may proceed. Your Honor, stand and please record. My name is John McCarthy. I'm from the Office of the State Appellate Defender, and I represent Garnell generally. This is an appeal from the findings of the trial court that Mr. Garnell failed to beat the cause and prejudice test in his Miller v. Aldana claim. Before I get into my actual argument, I'd like to do a little analogy that will be a framework for my argument. People always knew he fell down. People always knew when you threw something it eventually hit the ground and didn't go up. They didn't know it was gravity. They just could observe it and realize that's what was going to happen. Then came along Isaac Newton with the theory of gravity, the laws of motion, and added scientific certainty to what was going to happen, and our knowledge exploded. Now, Garnell generally was sentenced a couple years after that MSB Oklahoma. That was the first time the United States Supreme Court had gotten into that juveniles are different, and that was based on observation. Anybody who's ever had a teenage son or daughter knows they're a little crazy. They take chances. They don't think about risk. They're impulsive. The members of the court also knew that a lot of the juveniles who committed these horrific crimes had horrific, horrific backgrounds. So the evidence based on not science, but their observations, the United States Supreme Court said before you give juveniles the most harshest punishments, you have to consider their backgrounds. Garnell generally received a sentence in here, and it was consistent with that. The trial court considered Garnell as a difficult upbringing. His father died when he was young. He was molested at age six, went to an all-night school, was mercilessly bullied by his fellow students to the point where he had a breakdown by the age of 14. It considered Garnell's past crimes, it considered this crime, and a psychiatric report that happened. All of that is perfectly fine with The problem came when the trial court looked at Garnell's age at the time of the offense and said, sir, you were one month short of your 18th birthday, and you pretty much are who you were going to become. Well, that was probably consistent with what people thought at the time. You turn 18, you're a man, and you've outgrown your childhood ways. Counsel, what year was the crime and what year was the sentencing? It was in the early to mid-eighties, I don't know the precise year. I believe he was sentenced in 84 or 85. So he was one month shy of his 18th birthday at the time of the crime. How old is he now? Well, he's been in prison for the last 35 years. I would say he's around 55, 56. That'd be a guess, though. Under Miller, and based on the science that has developed since our observations, we know that an 18-year-old's brain is nowhere near fully developed. They still suffer a lot of the same maladies that a person in their younger teens. In some respects, they're even a little bit worse. And I'd like to focus a little bit on what the psychiatric findings were in this case, and I want to highlight them for you for a second. Personality disorder of a paranoid type, with suspicion of distrust, and is prone to act with unpredictable behaviors. Antisocial, he's immature, demanding, self-indulgent, narcissistic, self-centered, impulsive, unpredictable, and lack control over basic emotions. Now, if you consider him an adult, that's bad. But under what we know now through the science of adolescent brain development, you could copy and paste that description, cardinal generally, into a modern-day medical journal describing the mind of an 18-year-old. So he wasn't that different from everybody else. Now, the other problem with considering him an adult at the age of one month shy of his 18th birthday is that would cause a trial court to put less weight into his background, which was, as I said, horrific. If you're being molested at age six and having a breakdown at age 14, you're not capable of, well, based on what we know now, you're not capable of fixing yourself for that. Are you saying the court can't distinguish, though, between a 17-year-old and a 14-year-old? I mean, doesn't it, isn't that a factor that he's 17, he's close to 18? Isn't that a factor in aggravation as opposed to whether he was a 14-year-old? Well, in a strange kind of way, that's actually not true. There's been studies that say an individual of 16 and 17 is at his most reckless. And I don't believe the court in this case was comparing Cardinal to a 14-year-old. He was comparing him to an adult because he was only one month shy of his 18th birthday. He wasn't considered a juvenile at all, suffering from any of the maladies that a juvenile suffers from. But wasn't Miller about a mandatory sentence? Yes, it was. Is that what we have here? Is this mandatory or discretionary? Discretionary. And Montgomery, which came after Miller, if you read it, it pretty much expands from mandatory minimums to discretionary. Because it really doesn't make sense to say that if you got a mandatory sentence and the trial court didn't consider the proper factors, you get another sentence in here. But if you got a discretionary life sentence and the trial court considered a matter it shouldn't have considered, you're out of luck. Counsel, this court has addressed similar issues in the Holman case, hasn't it? I believe Holman is completely distinguishable from this case. In Holman there was no affirmative information on the record to show that the trial court did anything inconsistent with Alabama v. Miller v. Alabama. Here we have something on the record that shows that the trial court considered a factor that's contrary to Miller v. Alabama. There's a reason why Miller v. Alabama was declared to be retroactive. The court really wants to focus in on not sentencing youth to life without possibly parole without considering proper things. In fact, recently there was a recent set of remands from the United States Supreme Court in which Tatum v. Arizona, all those courts considered the individual youth. But what they didn't do is the rarest juvenile offenders, those whose crimes reflect permanent incorrigibility. And that's the question the court wants to focus on. What I find interesting in this case, even without knowing about adolescent brain development, the psychiatrist in this case, who knew all of Garneau's background, all the crimes he committed, the situation of this crime, they concluded they could not determine whether he would grow out of it or not. And so I think the psychiatrist, while the trial court officer does not have to follow recommendation of the psychiatrist, I think given today, if a psychiatrist testified in front of a judge, explained adolescent brain development, that's really the miscarrying of new crimes that are going on here. And a psychiatrist who looked at this report that was done and maybe interviews Garneau today, maybe interviews his counselor, putting together another report, would that report now say that Garneau was not one of the rarest juveniles? If there are no further questions, thank you. Thank you, Counselor. We'll have an opportunity for rebuttal. Appellee. May it please the Court. My name is Sharon Shanahan, and I represent the people of the state of Illinois. Your Honor, you mentioned Holman. And I would like to note that the Illinois Supreme Court accepted the plea to appeal in Holman. Briefing is completed. Oral argument is completed. When was it argued? May 10th. And a decision is expected probably in September. Although that's always up. But that's the status of Holman. The briefing is done, the oral argument is done, we're just waiting for a decision. Counsel says that Holman is different in this case because there were no findings at all in Holman about the life of the youth beforehand and his culpability. To me, that makes this a better case, not a worse case. Because in this case, given the fact that this was in, the crime was in 1985. So he would have been 17 in 1985. It was one month short of his 18th birthday in 1985. And I don't know, I didn't see him just briefly looking through my notes when the sentencing hearing was. But given the fact that we have a judge 30 years before Miller, and not knowing what Miller's going to say, this judge did everything that Miller required. Who was the trial judge? Do you know? If you don't. Schroeder, Neal Schroeder. It doesn't. Well, I take that back. That's the judge that did the. Post-conviction hearing? Post-conviction. What about this age of reason statement? Well, I think I explained that. I mean, I think it's interesting that the defendant didn't even comment on that in the refineries. I think the age, again, we're talking about 30 years ago. Is that right? That'd be 32. And that the phrase age of reason is a term of art. It's a legal term of art. It's a religious term of art. And it simply means seven years old. And when you look at how he used that phrase, that he was looking at it, and I'm trying to remember exactly how that came about, but that it was his, that he had to look at him at the time before he came through the age of reason and in his teenage years. Something like that. And I think that very use of the word indicates that he was making a distinction between a young child and a teenager. So this is the judge who, this is the sentencing judge that sits through the entire trial. And certainly, evidence received at trial is a factor in sentencing. And I just want to point out just a couple of things in this trial. The defendant randomly picked this man out. He forced him to drive away after his co-defendants helped beat on him for a while, the victim, for a while. They left. They quit. He goes back to the car and gets the jack out of the car and comes back and finishes killing him and then just casts him aside in a ditch. The extent of participation is a Miller factor. Peer pressure is a Miller factor. The defendant was the primary person. The circumstance of the offense is a Miller factor. All of those things were considered by the trial court. They were presented in evidence at the hearing, and certainly there was no peer pressure here. So counsel, is it the state's position that this original sentencing hearing did comply with all the factors required by Miller and Montgomery? Absolutely. Because in addition to a few, like I said, I just listed a few of those factors that the trial court could have considered from the trial. Then you go on to the sentencing court hearing itself, in which the sentencing court heard the testimony of special education teacher Richard Etz. A few months before the murder, the defendant knocked Mr. Etz down and hit him in the face with a chain. And the only thing Mr. Etz did was to drive the defendant's little brother home after school. And then he also heard the testimony of Simon Scott, Simon, who was a stock boy. Just days before the murder, the defendant took a tire tool that Scott picked and weighed on fast enough at the store. The PSI, which the court considered, showed six petitions to revoke probation. They showed altercations in the county jail since he'd been arrested. The probation officer stated that the defendant's greatest weakness was his failure to learn from his past mistakes. So there again, we have possibility of rehabilitation considered, a Miller factor. Family and home environment, a Miller factor. The defendant was adopted as an infant. His father did die when he was fairly young. But he and his mother were very close, and she was very supportive. The defendant attended an all-white school from kindergarten through third grade. And he was teased because he was the only African American. The trial court considered that. The trial court considered the fact that the defendant was sexually abused by an adult white male when he was six or seven years old. The probation officer said that the defendant's mother's support was his greatest strength. In fact, his only strength. The trial court considered the psychiatric report. They noted that the defendant had been, had psychiatric problems several times, that the mother expressed in 1984, three years before the murder, fears of living with the defendant. The psychiatric report noted that the defendant had an egocentric attitude and placed blame on others or on society. The psychiatrist said that the defendant's anger was very strong, and yet he denied his own anger. He said that he mistrusted others and used this as a rationalization. He said despite negative influences, one cannot excuse the crime he committed. The prosecutor noted that a sentence was necessary to deter others. He noted that the defendant committed a felony while on probation. He noted that the attack was planned but totally unprovoked. And that the co-descendants walked away. He noted that the defendant refused help. The sentencing decision, I think, is what's most critical here, is that the trial court said, referenced Eddings v. Oklahoma and stated, your troubled youth is a matter which this court should consider in mitigation, and I do consider that and those factors you have mentioned. Eddings says youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and psychological damage. It says adolescents, particularly in early and middle teen years, are more vulnerable, more impulsive, and less self-disciplined than adults. Crimes committed by youth may be just as harmful to victims as those committed by older persons, but they deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults. Moreover, youth crimes as such are not exclusively the offender's fault. Offenses by the young also represent a failure of family, school, and the social system which share responsibility for the development of America's youth. Did the sentencing judge find incorrigibility or depravity? The trial court said, I can tell you exactly what he said, the danger that you present to society and the likelihood of you committing other crimes is so great that it outweighs whatever rehabilitative potential you have. Rebuttal. I think the quote from Eddings, read by opposing counsel, is very instructive on what people thought about youth back in the 1980s. They were talking about male teens being impulsive. And we now know that it doesn't stop with the male teens. And this judge relied on the fact that my client was one month shy of 18, considered him to be an adult. That made him, while he admittedly looked at his troubled childhood and how horrific it was, he diminished that by considering my client to be a client or able to control his thoughts. The crimes my client committed tended to be impulsive, random, stupid, among other things. And I'm not here to argue that this court should let my client out of prison. What I'm arguing is every person according to Miller v. Alabama deserves a sentencing hearing in which, especially 17 and 18-year-olds, are still considered to be juveniles because of an adolescent brain development. My client never got that. He may get his sentencing hearing, go back, and may reimpose, for all the reasons opposing counsel said, reimpose life without the possibility of parole. That's not the argument. The argument is he has a constitutional right to a sentencing hearing that complies with Miller. And it's not trial court's fault. He, under Eddings, he did an outstanding job. But Eddings wasn't based on science. Miller v. Alabama was. And for that reason, I'm requesting a sentencing hearing for my client. Thank you, counsel. The court will take this matter under advisement and issue a decision in due course.